UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RANDY J. AFRICANO, | ) | No. 17 CV 7238 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| ATRIUM MEDICAL CORPORATION, a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) ) | October 10, 2019 |

**MEMORANDUM OPINION and ORDER**

Before the court is Defendant Atrium Medical Corporation's ("Atrium") motion to strike the report and exclude the opinions of Plaintiff Randy J. Africano's expert witness, Scott Guelcher, Ph.D. For the following reasons, the motion is granted:

**Background**

Africano is suing Atrium claiming strict liability, negligence, and failure to warn in connection with its ProLite mesh, which is a medical product made of polypropylene mesh that is used in hernia repairs. During discovery, Africano submitted an initial expert report authored by Duane Priddy, Ph.D. Dr. Priddy asserts in his report that polypropylene mesh, such as that used in ProLite, is inherently unstable and readily oxidizes and is therefore inappropriate to implant in the human body for long-term use. (R. 193, Def.'s Mot. Ex. C at 2.) Atrium produced

its own expert, Stephen Spiegelberg, Ph.D., who opines that polypropylene mesh is a safe biomaterial.[1] (R. 204, Def.'s Reply at 3.)

On July 12, 2019, Africano reported to the court that he intends to offer expert opinions to rebut Atrium's expert opinions. (R. 180.) Specifically, Africano advised the court that he intends to retain Scott Guelcher, Ph.D., to "testify to the adverse effects caused by degradation of polypropylene mesh *in vivo*" in rebuttal to "a new issue" Dr. Spiegelberg raised in his report. (Id. at 2.) On July 13, 2019, this court ordered Africano to disclose his rebuttal experts. (R. 181.) The order also required that Africano's "experts must restrict themselves to the expert opinions offered by [Atrium]." (Id.) In response, Atrium asked this court to reconsider its order because it feared that Africano would misuse Dr. Guelcher's opinions to merely support his evidence on a central issue rather than to actually rebut the opinions of Dr. Spiegelberg. (R. 182.) This court denied Atrium's motion but reiterated that Africano's "experts must restrict themselves to the expert opinions offered by [Atrium]." (R. 185.) This court further explained that if Africano "fails to comply with this order, [Atrium] may seek to have the new opinions excluded." (Id.) Following that order, Africano produced three rebuttal expert reports prepared respectively by Dr. Priddy, Dr. Guelcher, and Dr. Pamela B. Sylvestre. (R. 193, Def.'s Mot. at 3.) Atrium then filed the current motion to strike Dr. Guelcher's report.

---

[1] Plaintiff filed Dr. Spiegelberg's report under seal because it is subject to a protective order. (R. 200, Pl.'s Resp. Ex. B.) In deference to the protective order, the court will limit its references here to information that is available in the parties' publicly-filed briefs. In doing so, the court does not agree or disagree with Atrium's confidential designation.

2

## Analysis

This court has discretion over discovery determinations, including whether to exclude improper expert reports. *See Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 950 (7th Cir. 2018). Under Federal Rule of Civil Procedure 26(a)(2)(D)(ii), rebuttal expert reports must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Accordingly, proper rebuttal evidence should be used to "contradict, impeach, or defuse the impact of the evidence offered by an adverse party." *Frerck v. Pearson Educ., Inc.*, No. 11 CV 5319, 2014 WL 477419, at *2 (N.D. Ill. Feb. 6, 2014) (quoting *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 680 (7th Cir. 2008)). Evidence that is only offered as additional support of a party's argument and that does not contradict any evidence introduced by the opposing party is not proper rebuttal. *Noffsinger v. The Valspar Corp.*, No. 09 CV 916, 2011 WL 9795 at *6 (N.D. Ill. Jan. 3, 2011) ("[A] party may submit an expert rebuttal witness who is limited to contradicting or rebutting evidence on the same subject matter identified by another party in its expert disclosures." (internal quotations omitted)).

In moving to strike Dr. Guelcher's opinions Atrium argues that his report is improper rebuttal for two reasons. First, Atrium argues that Dr. Guelcher's report does not actually refute Dr. Spiegelberg's opinions and is not a true rebuttal, but rather an untimely causation report intended to bolster and expand upon Dr. Priddy's original report. (R. 193, Def.'s Mot. at 2.) Second, it asserts that Dr. Guelcher's opinions are not rebuttal opinions because his report "focuses on central elements of

Plaintiff's claims that either were, or should have been, addressed in Plaintiff's initial expert reports." (Id.) In response, Africano contends that it is of no concern that Dr. Guelcher's report touches on the same matter as Dr. Priddy's report, so long as Dr. Guelcher's report contradicts Dr. Spiegelberg's opinions. (R. 199, Pl.'s Resp. at 5.) According to Africano, Dr. Guelcher's report does just that.

As to Atrium's first argument, rebuttal should be the result of a winnowing process, not an expansion of a party's original expert report, with a narrower focus than the initial expert opinion. *McCann v. Cullinan*, No. 11 CV 50125, 2016 WL 4593835, at *2 (N.D. Ill. Sept. 2, 2016), *report and recommendation adopted sub nom*, *McCann v. Ogle Cty.*, 2016 WL 5807922 (N.D. Ill. Oct. 5, 2016). The court in *McCann* offers the following example of proper rebuttal:

> [A] plaintiff's initial (sometimes referred to as "affirmative") expert report may identify opinions #1, #2, and #3. Subsequently, a defendant's expert report (sometimes referred to as "response reports") may rebut opinions #1, #2, and #3, but also add opinions #4, #5, and #6. That defendant's expert report is a proper rebuttal in that it contradicts the first three opinions. But that defendant's expert report may also be an appropriate initial expert report by presenting opinions #4, #5, and #6. Under these circumstances, Rule 26(a)(2)(D)(ii) envisions that the plaintiff be given the opportunity to provide— if it chooses—a rebuttal expert to contradict opinions #4, #5, and #6. But what is not permissible is allowing plaintiff to now—by way of a "rebuttal"—offer opinions #7, #8, and #9.

2016 WL 4593835, at *2.

Furthermore, the measure of proper rebuttal is not whether it offers support for arguments that could have been raised in the case-in-chief, but whether it directly refutes arguments offered by the opposition. *Pantaleo v. Hayes*, No. 08 CV 6419, 2011 WL 2517265, at *1 (N.D. Ill. June 23, 2011). A "party may not offer testimony under

4

the guise of 'rebuttal' only to provide additional support for his case in chief." *Noffsinger*, 2011 WL 9795, at *6. Rather, the rebuttal report must address issues raised by the opposition's expert instead of simply bolstering support for issues for which the party already bears the burden of proof. *Stanfield v. Dart*, No. 10 CV 6569, 2013 WL 589222, at *3-*4 (N.D. Ill. Feb. 14, 2013) (striking the expert's report for failing to address the defendant's expert's conclusions or methodology and instead attempting to bolster the *prima facie* case); *Butler v. Sears Roebuck & Co.*, No. 06 CV 7023, 2010 WL 2697601, at *1 (N.D. Ill. July 7, 2010) ("Rebuttal reports should be limited to contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party in its expert disclosures." (internal quotations omitted)). Accordingly, this court may strike an expert report that does not conform to the requirements for proper rebuttal. *Stanfield*, 2013 WL 589222, at *4.

Here Atrium has demonstrated that rather than contradicting or impeaching its expert's report, Dr. Guelcher's report serves primarily to shore up Africano's case-in-chief. In his report, Dr. Guelcher references Dr. Spiegelberg's report in only two places, with both references pointing out undisputed facts rather than any matters in contention. (R. 193, Def.'s Mot. Ex. A at 1 n.1 (identifying the mesh's composition) & 13 n.39 (noting the name of a chemical compound in the mesh).) Beyond these two references, Dr. Guelcher's report does not address Dr. Spiegelberg's opinions. Recognizing that defect, Africano argues that the entirety of Dr. Guelcher's report rebuts Dr. Spiegelberg's broad thesis that polypropylene mesh is safe, regardless of whether it directly references any of Dr. Spiegelberg's opinions.

5

This court agrees with Atrium that not only does Dr. Guelcher's report fail to contribute any new perspective rebutting Dr. Spiegelberg's opinions, but his opinions simply reiterate the same arguments Dr. Priddy made in the initial expert report. Dr. Priddy's initial report focuses on polypropylene's oxidative degradation following implantation—the same thesis Dr. Guelcher offers. (Id. at 6.) Rather than questioning the conclusions or methodology Dr. Spiegelberg offers, Dr. Guelcher repeats the points raised by Dr. Priddy. Dr. Priddy's initial report opines that polypropylene is "inherently prone to oxidative degradation and loss of strength *in vivo*." (Id. Ex. C at 3.) Similarly, Dr. Guelcher opines that "[a]fter implantation [i.e. *in vivo*], the surface of the polypropylene mesh reacts with reactive oxygen species that are secreted by inflammatory cells, causing it to oxidize and degrade." (Id. Ex. A at 3.) Dr. Priddy states that, as the mesh fibers "rapidly degrade and become brittle," the mesh integrity weakens and the "brittle surface layer flakes off the fibers causing inflammation/infection of the surrounding tissue." (Id. Ex. C at 3.) Likewise, Dr. Guelcher states that "[t]he dynamic environment where the ProLite device is implanted coupled with the foreign body reaction leads to oxidation, chain scission, reduction in molecular weight, embrittlement, degradation, flaking, pitting, and cracking." (Id. Ex. A at 3.) Both Drs. Priddy and Guelcher focus on the oxidative properties of polypropylene and the tertiary bond cleavage, (id. Ex. A at 4 & Ex. C at 4), the foreign body reaction of the body in response to polypropylene implantation, (id. Ex. A at 7 & Ex. C at 4), the problems with relying on antioxidants to stabilize

6

the plastic, (id. Ex. A at 13 & Ex. C at 5), and the embrittlement of the mesh while implanted, (id. Ex. A at 12 & Ex. C at 6).

In responding to the current motion Africano asserts that Dr. Guelcher's five contentions in his summary are all direct refutations of Dr. Spiegelberg's central thesis that polypropylene mesh is a safe biomaterial. (R. 199, Pl.'s Resp. at 2; *see also* R. 204, Def.'s Reply at 3.) But Africano has not shown that Dr. Guelcher's report responds to any specific new arguments or evidence that Dr. Spiegelberg raised. Specifically, Dr. Guelcher's summary of opinions, (R. 193, Def.'s Mot. Ex. A at 3), which Africano offers as evidence of rebuttal, (R. 199, Pl.'s Resp. at 3-4), does not convey any new information not already covered by Dr. Priddy. In fact, in that summary Dr. Guelcher describes his report as "an examination and assessment of the polypropylene mesh utilized in the Atrium ProLite mesh device marketed for hernia repair," not as a rebuttal to Dr. Spiegelberg's opinion. (Id. Ex. A at 3.) Dr. Guelcher's report is not proper rebuttal, as it only supplements the arguments already made in Dr. Priddy's initial expert report. To allow Dr. Guelcher's report would effectively undermine the purpose of Rule 26(a)(2)(D)(ii), which is to give a party the chance to respond to arguments raised by the opposition.

As to its second argument, Atrium contends that all of Dr. Guelcher's opinions go to the question of causation, a central element of Africano's *prima facie* case. For matters on which Africano bears the burden of proof, such opinions must be offered in the initial expert reports, not in a rebuttal report. *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, No. 03 CV 07713, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005);

7

*see also Braun v. Lorillard Inc.*, 84 F.3d 230, 237 (7th Cir. 1996) ("The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case . . . must put in his evidence on the issue as part of his case in chief."). Nonetheless, "the mere fact that opinions offered in a rebuttal report touch upon the same subjects covered in an initial expert report does not require that the rebuttal report be stricken." *Green v. Kubota Tractor Corp.*, No. 09 CV 7290, 2012 WL 1416465, at *5 (N.D. Ill. April 24, 2012); *see also Lott v. ITW Food Equip. Group LLC*, 10 CV 1686, 2013 WL 3728581, at *23 (N.D. Ill. July 15, 2013) (noting that if an expert report could be stricken for such a reason, then vast amounts of otherwise appropriate rebuttal could be excluded simply because the party failed to anticipate an argument proffered by the defense). However, the rebuttal opinions must still add something new to the discovery process and not merely bolster previous opinions. *See Noffsinger*, 2011 WL 9795, at *6.

In distinguishable circumstances in *Pantaleo*, the proposed expert rebuttal opinion was permitted, even though it could have been disclosed as part of the initial expert reports. 2011 WL 2517265, at *1. The plaintiff there did not employ any experts in support of his case-in-chief, but after the defendants submitted expert reports on the standard of care, the plaintiff submitted rebuttal expert reports addressing the defense experts' reliance on the standard of care. *Id.* The plaintiff's rebuttal report responded to an affirmative defense—the medical standard of care—for which the defendants had the burden of proof. Therefore, the rebuttal report was the appropriate forum to refute those arguments. *Id.* at *2.

8

Unlike the affirmative defense issue in *Pantaleo*, Africano admits that Dr. Guelcher's report only addresses Dr. Spiegelberg's broad conclusion that polypropylene mesh is a safe material. (R. 199, Pl.'s Resp. at 2; *see also* R. 204, Def.'s Reply at 3.) The question of polypropylene's safety for human implantation directly relates to causation, a core element of Africano's case that Dr. Priddy has already addressed. Dr. Guelcher's report focuses broadly on the matter of polypropylene's safety and, therefore, could and indeed should have been presented as an initial expert report. Without substantial justification or proof that the omission was harmless, the failure to provide an expert report at the appropriate time results in the report being barred.[2] *See* Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *McCann*, 2016 WL 4593835, at *3. Dr. Guelcher does not respond to an affirmative defense as the rebuttal report in *Pantaleo* did or offer a response to new arguments that Africano did not anticipate, given that he repeats the arguments Dr. Priddy offered in the initial expert report. Accordingly, Dr. Guelcher's report is not a proper rebuttal report. *See Nelson v. Ipalco Enters., Inc.*, No. IP02477CHK, 2005 WL 1924332, at *8 (S.D. Ind. Aug. 11, 2005) (striking expert report that plaintiff "tried to

---

[2] In insisting that Dr. Guelcher's report is proper rebuttal evidence, Africano fails to address substantial justification or harmlessness under Rule 37(c).

slip . . . in as supposed 'rebuttal,'" noting "[s]uch tactics contribute to the length, complexity, and expense of litigation").

In circumstances where part of an expert's report "constitutes improper bolstering while other parts fairly respond to the conclusions of the opposing party's experts, the appropriate course is to limit the proposed rebuttal expert's testimony rather than striking it altogether." *Cage v. City of Chi.*, No. 09 CV 3078, 2012 WL 5557410, at *2 (N.D. Ill. Nov. 14, 2012); *Noffsinger*, 2011 WL 9795, at *7. Thus, were Dr. Guelcher's report to respond to Dr. Spiegelberg's conclusions by challenging his methodology or evidence, those portions of rebuttal would be permissible. *See Noffsinger*, 2011 WL 9795, at *7 (permitting the portion of the expert report that "reviewed and critiqued the reports of defendants' experts [by] challenging their methodology and the evidence on which they relied"). However, Africano has not identified any selection of the report that could be salvaged as rebuttal, and because Dr. Guelcher's report nowhere directly contradicts Dr. Spiegelberg's methods or opinions, this court does not see an avenue to selectively allow parts of Dr. Guelcher's report.

In other clashes over rebuttal reports the court has pointed out how advisable it is for rebuttal experts to clearly identify what contentions they are contradicting or refuting. *Ernst v. City of Chi.*, No. 08 CV 04370, 2013 WL 4804837 at *3 (N.D. Ill. Sept. 9, 2013) ("If an expert truly were to respond to another expert's report, the obvious thing to do—and the most useful thing for a jury or a judge—would be to address that expert's points, either in sequence or by identifying them and critiquing

10

them."). For example, the rebuttal expert report provided by Dr. Sylvestre follows this technique, and Atrium has not moved to strike it as an improper rebuttal. (R. 193, Def.'s Mot. at 3-4 & Ex. B.) While this structured approach to identifying the object of rebuttal is not legally required, its absence "requires painstaking comparison and scrutiny from the judge" as well as "contortions" by the presenting party to try to "rehabilitate and explain" the report. *Ernst*, 2013 WL 4804837, at *4. Here, that lack of structure has resulted in the predicted expenditures of the court's and the parties' energies, but when all is said and done, the court concludes that Dr. Guelcher's report does not comply with the court's discovery orders, (R. 181; R. 185), and does not qualify as a proper rebuttal opinion.

## Conclusion

For the foregoing reasons, Atrium's motion to strike is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**