IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RANDY J. AFRICANO,

Plaintiff,

v.

ATRIUM MEDICAL CORPORATION,

Defendant.

Case No. 17-cv-7238

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

In October 2021, a jury entered a verdict in favor of Defendant Atrium Corporation and against Plaintiff Randy Africano on Plaintiff's failure-to-warn and manufacturing defect claims. Plaintiff has now moved for a new trial on the basis that this Court made various pretrial evidentiary errors. [409]. Defendant has also filed a bill of costs, requesting $66,929.81 in fees recoverable as the prevailing party. [412]. For the reasons explained below, this Court denies Plaintiff's motion for a new trial [409] and grants in large part Defendant's bill of costs [412].

## I.    Background

Randy Africano sued Atrium Medical Corporation for strict liability under manufacturing defect and failure-to-warn theories, alleging that Defendant's unsterile ProLite mesh injured him after its implantation during inguinal hernia surgery. After a multi-day trial in October 2021, the jury returned a verdict in favor Defendant and against Plaintiff on both strict liability theories. [403]. Plaintiff has now moved for a new trial under Federal Rule of Civil Procedure 59, arguing that this Court's erroneous exclusions of various pieces of evidence warrant a new trial. [409].

Defendant has also filed a bill of costs, requesting a total of $66,929.81 of prevailing party costs. [412].

## II.     Legal Standards

### A.     Motion for New Trial

A motion for a new trial under Rule 59 may be granted only "when the district court—in its own assessment of the evidence presented—believes that the verdict went against [its] manifest weight." *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 831 (7th Cir. 2020) (alteration in original) (quoting *Mejia v. Cook County*, 650 F.3d 631, 634 (7th Cir. 2011)). Rule 59(a) grants the trial court the "special power" to get a "general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts." *Id.* (quotation omitted). In moving for a new trial, a party seeking to overturn a court's evidentiary ruling "bears a heavy burden" because a trial court's balancing of probative value and unfair prejudice is highly discretionary. *Henderson v. Wilkie*, 966 F.3d 530, 534–35 (7th Cir. 2020) (quoting *Speedy v. Rexnord Corp.*, 243 F.3d 397, 404 (7th Cir. 2001)). Evidentiary errors warrant a new trial only "if the evidentiary errors had 'a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice.'" *Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 812 (7th Cir. 2021) (quoting *Fields v. City of Chicago*, 981 F.3d 534, 544 (7th Cir. 2020)).

### B.     Bill of Costs

Under Federal Rule of Civil Procedure 54(d), "costs—other than attorney's fees—should be allowed to the prevailing party." Rule 54(d) creates a presumption that the prevailing party will recover costs. *Crosby v. City of Chicago*, 949 F.3d 358, 363–64 (7th Cir. 2020). However, "the decision to make the award is entrusted to the discretion of the district court. In assessing a bill of costs, the district court must determine whether the costs are allowable and, if so, whether they are both reasonable and necessary." *Soler v. Waite*, 989 F.2d 251, 254–55 (7th Cir. 1993). "Any party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). 28 U.S.C. § 1920 enumerates the categories of costs recoverable under this rule.

## III.     Plaintiff's Motion for a New Trial

This Court begins with Plaintiff's motion for a new trial. Because Plaintiff argues that this Court's evidentiary errors precluded him from having a fair trial, this Court addresses each piece of evidence in turn below.

### A.     Government Complaint and Consent Decree

Plaintiff argues this Court erred in granting Defendant's motion *in limine* no. 1, which concerned evidence of a government complaint and consent decree against Defendant. [410] at 5; *see* [344]. As this Court explained in its order on the motion [344], the United States government and Defendant entered into a consent decree in 2015 in New Hampshire federal court. [301-1]. The consent decree shut down

3

Defendant's manufacturing facility in Hudson, New Hampshire and ordered Defendant to come into compliance with the Food, Drug, and Cosmetic Act's manufacturing regulations. *Id.* This Court excluded evidence of both the consent decree and the government's complaint. [344] at 3–5. This Court reasoned that both constituted inadmissible hearsay; that the complaint did not fall under the public records exception to hearsay; that the consent decree did not constitute non-hearsay evidence as a statement of a party-opponent; and that Federal Rule of Evidence 408 also rendered the consent decree inadmissible to the extent Plaintiff offered it to prove the truth of the matters contained therein. *Id.*

On the eve of trial, Plaintiff moved to reconsider this Court's exclusion of the complaint, arguing that he intended to use the complaint for the non-hearsay purpose of impeaching Defendant's argument that the FDA's October 1, 2013 Establishment Inspection Report (EIR) demonstrated that Defendant had cured the deficiencies related to the validation of the ethylene oxide (EO) sterilization process. [362]. This Court denied Plaintiff's motion. [375]. This Court noted that the EIR and complaint were both based on the same inspection that took place at Defendant's facility between July 9 through October 1, 2013; that the FDA's EIR stated that the "Firm's re-validation of the EO sterilization process was reviewed and appeared to be adequate"; and that the FDA complaint did not state anything inconsistent with the EIR, but rather, it broadly alleged regulatory violations that were not facially related to the EO sterilization process described in the EIR. *Id.* Accordingly, this Court failed to see how the complaint could be used to impeach the EIR. *Id.* Upon further

4

examination, this Court also found the complaint inadmissible under Rules 401 and 403 because it was based on an inspection that took place *after* Defendant had already manufactured, sterilized, and shipped Plaintiff's mesh. *Id.* Thus, this Court reasoned that the wrongdoing alleged in the complaint bore little relevance to the issues in this case, and that the risk of prejudice and jury confusion outweighed the complaint's limited probative value. *Id.*

Now, in moving for a new trial, Plaintiff argues that the complaint is not hearsay because Plaintiff would not have offered it to prove that "Defendant's sterilization validation was not adequate, only that the FDA had not found that it was." [410] at 7. This argument, as Defendant points out, is pure sophistry. The only relevance of the FDA's view of a process being inadequate is to show that the process actually is inadequate. Plaintiff therefore sought to admit the complaint for the truth of the matters purportedly asserted therein—that Defendant's sterilization validation was inadequate. This runs headlong into the rule against hearsay.

Plaintiff also argues that the complaint constitutes highly relevant evidence because it contradicts the 2013 EIR's statement that Defendant's sterilization validation "appeared to be adequate," and thus, this Court erred by not allowing Plaintiff to present such probative evidence. [410] at 6–7. But again, the complaint does not contradict the FDA's finding in the EIR that Defendant's validation appears to be adequate because the complaint does not say anything about whether Defendant's sterilization validation was inadequate. Rather, the complaint's allegations state broad regulatory violations that, on their face, do not specifically

5

relate to the sterilization validation process that concerned the ProLite product that Plaintiff claims injured him. *See* [301-2]. Because the complaint's allegations are not inconsistent with the FDA's statement in the EIR, it could not have been offered for the non-hearsay purpose of impeaching the EIR.

Plaintiff's argument that there is "no more reason to admit the statements made by FDA in the EIR than to admit the . . . allegations by FDA in the Complaint" fares no better. *Contra* [410] at 3. The complaint contains mere allegations, not factual findings, and therefore does not qualify for the public records exception to hearsay. [344] at 4. The EIR, on the other hand, contains a government agency's factual findings, thus qualifying as a public record exempted from the rule against hearsay. *See also Jordan v. Binns*, 712 F.3d 1123, 1132 (7th Cir. 2013) (noting that Federal Rule of Evidence 803(8)(A)(iii) admits records setting forth "factual findings from a legally authorized investigation").

For these reasons, this Court did not err in excluding evidence of the complaint and consent decree.

### B. Observations 2 and 3

Plaintiff argues that this Court also erred in excluding evidence of Observations 2 and 3 from the FDA Warning Letter. *See* [365] (excluding observations 2 and 3, among others, from the FDA Warning Letter). As summarized in one of this Court's pretrial rulings, on October 11, 2012, Defendant received a warning letter from the FDA identifying six separate Observations concerning Defendant's New Hampshire facility. [344] at 2. After considering the parties'

arguments, this Court allowed Plaintiff to introduce the first page of the Warning Letter and the first of six Observations, which was directly relevant to the case. [365]. That first observation stated that Defendant had not "adequately validated your current Ethylene Oxide (ETO) sterilization process that is used to sterilize all thirty nine (39) of your medical devices." [302-5] at 3. This Court precluded Plaintiff, however, from introducing Observations 2–6 in the Warning Letter. [365]. Plaintiff now challenges this Court's exclusion of Observations 2 and 3.

Observation 2 concerned the C-QUR mesh, not the ProLite mesh that allegedly injured Plaintiff. [302-5] at 3. Specifically, Observation 2 warned Defendant of its "[f]ailure to review, evaluate and investigate any complaint involving the possible failure of a device, labeling or packaging to meet any of its specification, as required by 21CFR820.198(c)." *Id.* Observation 2 detailed four complaints from 2012 that related to infections associated with Defendant's "C-QUR mesh products" and stated that the FDA "did not observe any further investigation into these potential complaints." *Id.* at 4. The FDA also observed that "6 out of 14 C-QUR mesh infection complaints did not include the lot number of the device." *Id.*

Observation 3 concerned the FDA's findings, after an inspection of Defendant's facility, of "numerous complaints of foreign material, including thirty-five (35) confirmed instances of hair being found in your sterile medical devices." [302-5] at 4. Observation 3 also stated that one of the FDA investigators saw Defendant's employees exiting a clean room "with hair exposed and not fully contained within required disposable hats." *Id.*

In excluding evidence of Observations 2 and 3, this Court noted that in this circuit, evidence of other incidents in products liability cases "is relevant to show the existence of a danger, the defendant's notice of the danger, and the cause of the [incident]." [350] at 4–5 (quoting *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 699 (7th Cir. 2007)). But before admitting that evidence, Plaintiff must show that the other incidents occurred under substantially similar circumstances because the probative force of evidence of other incidents decreases as the conditions of them become less similar to the incident under consideration. *Id.* at 5 (citing *Chlopek*, 499 F.3d at 699). Plaintiff, however, failed to demonstrate the probative values of Observations 2 and 3. Observation 2 concerned the complaint handling procedures for the C-Qur mesh product, and Observation 3 related to the FDA's finding of hair particles on Defendant's products. These incidents are not directly related to the ethylene sterilization process that allegedly rendered Plaintiff's ProLite mesh unsterile; thus, it was incumbent upon Plaintiff to demonstrate that the incidents involving the C-QUR mesh and the hair particles occurred under substantially similar circumstances as those at issue in this case. *Chlopek*, 499 F.3d at 699. Plaintiff did not make this showing, and thus failed to show the probative value of these other incidents. [350] at 5; [365]. Moreover, as this Court noted, the potential for these unrelated incidents to confuse and mislead the jury substantially outweighed their probative value. [350] at 5; [365].

In moving for a new trial, Plaintiff contends that this Court erred by excluding Observations 2 and 3 because those observations highlighted "systemic failures to

comply with Current Good Manufacturing Practice and other FDA regulations," so this Court prevented the jury from considering "the entirety" of Defendant's failure to address "basic contamination prevention." [410] at 11; *see also id.* at 2. This argument ignores that the jury saw the unredacted first page of the FDA Warning Letter, which stated:

> This inspection revealed that these devices are adulterated within the meaning of section 501(h) of the Act (21 U.S.C. § 351(h)), in that the methods used in, or the facilities or controls used for, their manufacture, package, storage, or installation are not in conformity with the Current *Good Manufacturing Practice (CGMP) requirements* of the Quality System (QS) regulation found at Title 21, Code of Federal Regulations (C.F.R.), Part 820.

[302-5] at 2 (emphasis added). Accordingly, the jury did consider evidence that the FDA expressed the view that Defendant's practices did not conform with its Good Manufacturing requirements.

Plaintiff also argues that Observations 2 and 3 would have "added significant circumstantial evidence" to support Dr. Sylvestre's causation testimony that it was more likely than not that Defendant's unsterile ProLite mesh injured Plaintiff. [410] at 2. This argument is unpersuasive because, as Plaintiff himself concedes, Dr. Sylvestre's trial opinions did not rely on "circumstantial evidence of contamination at the factory." *Id.* Moreover, as discussed above, Observations 2 and 3 concern other FDA observations having nothing to do with the sterilization procedures relating to the ProLite mesh product at issue here. Thus, this Court disagrees with Plaintiff that evidence relating to Observations 2 and 3 would have added significant circumstantial value to any specific causation analysis here, which required the jury

to evaluate whether the Defendant's *ProLite mesh was unsterile* when it left Defendant's hands, and whether that unsterile mesh caused Plaintiff's injuries. *See* [404] at 19, 21 (jury instructions given).

This Court also rejects Plaintiff's argument that exclusion of Observation 2 prevented Plaintiff from effectively cross-examining Defendant's sterilization expert, Chris Haas, who testified that Plaintiff's was the only complaint out of 800 devices in Lot 10883365. *Contra* [416] at 6–7. Plaintiff points specifically to Observation 2's language that "6 out of 14 C-QUR mesh infection complaints did not include the lot number of the device," [302-5] at 3, to argue that allowing the jury to see that language would have undermined the veracity of Mr. Haas' testimony that only one complaint (Plaintiff's) existed out of the 800 devices in his lot number, [416] at 7. But again, Observation 2 concerns only the failure to document complaints relating to the C-QUR mesh product, not the ProLite mesh product at issue. Accordingly, absent further proffer of substantial similarity between the C-QUR and ProLite, *Chlopek*, 499 F.3d at 699, the FDA's observation that Defendant fell short in logging complaints relating to the C-QUR mesh is not probative of whether it also failed to adequately log complaints relating to the ProLite mesh. Regardless, Plaintiff did not need evidence of Observation 2 to cross-examine Mr. Haas about the foundation of his testimony that only one complaint arose out of a particular lot of ProLite mesh. Plaintiff's counsel cross-examined Mr. Haas about how Defendant would know if other complaints existed, whether Mr. Haas conducted any independent investigation of complaints, whether Mr. Haas relied on Defendant's other employees, whether he

10

knew if the complaints department was "performing properly," and whether Mr. Haas had read the Warning Letter. *See* 4B Tr. (Haas) at 729:16–17, 730:2–6, 730:7–8, 730:9–12, 730:13–731:5. In short, Plaintiff had ample opportunity to question Mr. Haas about the foundation and veracity of his testimony about the lone complaint arising from Lot 10883365; he did not need Observation 2 to do so.

For these reasons, this Court did not err in excluding Observations 2 and 3.

## C.    A New Trial Is Not Warranted

After considering Plaintiff's arguments, this Court determines a new trial is unwarranted. Plaintiff has not demonstrated that any of this Court's evidentiary decisions constitutes error, much less the kind of error that had a substantial and injurious effect on the jury's verdict. *Burton*, 994 F.3d at 812. Accordingly, this Court denies Plaintiff's motion for a new trial [409].

## IV.   Defendant's Bill of Costs

Defendant has filed a bill of costs seeking a total amount of $66,929.81 in taxable costs. [412]. Plaintiff has objected to nearly every itemized cost. [414]. This Court will assess each category of requested costs below.

## A.    Fees of the Clerk and Marshal

Section 1920(1) authorizes the prevailing party to recover fees "of the clerk and marshal." 28 U.S.C. § 1920(1). Defendant requests $1,679.00 for such fees, which include the cost of serving a third-party subpoena on Dr. Alexander Nagle and the cost of eleven *pro hac vice* admission fees. [412-1] at 2.

The Seventh Circuit recently held that because *pro hac vice* fees "are too

distinct from the six kinds of costs enumerated in section 1920," such fees are not table "costs" under the statute. *Canter v. AT&T Umbrella Benefit Plan No. 3*, --- F.4th ----, No. 21-1514, 2022 WL 1485191, at *7 (7th Cir. May 11, 2022). This Court therefore will deduct the $1,550.00 in requested *pro hac vice* admission costs.

Plaintiff has also objected to the rush costs Defendant incurred by serving a third-party subpoena on Plaintiff's explanting surgeon, Dr. Nagle. [414] at 2. Defendant argues that it was forced to serve the subpoena on a rush basis because Plaintiff withdrew Dr. Nagle's name from his "will-call" list less than three weeks before trial and would not agree to present his testimony via deposition. [412-1] at 2–3. This Court finds the costs for the rush subpoena reasonable and necessary. Dr. Nagle performed Plaintiff's explant surgery and possessed highly relevant testimony due to his personal observations of the ProLite mesh upon removal from Plaintiff's body. Ultimately, the subpoena was unnecessary because this Court deemed Dr. Nagle an unavailable witness due to Dr. Nagle's surgery responsibilities and allowed Defendant to present Dr. Nagle's testimony via deposition. Even though Dr. Nagle did not appear in person to testify, "costs are allowable unless the [Plaintiff] shows that it was unreasonable for the [Defendant] to have believed that [Dr. Nagle's] testimony may be helpful." *Movitz v. First Nat. Bank of Chi.*, 982 F. Supp. 571, 574 (N.D. Ill. 1997); *see Indep. Tube Corp. v. Copperweld Corp.*, 543 F. Supp. 706, 722 (N.D. Ill. 1982) ("If a witness is subpoenaed to appear at trial in good faith, the costs may be taxed even if the witness does not actually testify."). Defendant reasonably believed Dr. Nagle's testimony would be helpful. Accordingly, this Court

overrules Plaintiff's objection to the costs of serving Dr. Nagle's subpoena.

### B.     Transcript Fees

Section 1920(2) allows the prevailing party fees "for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Defendant requests $42,998.01, which is the sum of $15,446.80 for costs of obtaining trial and pre-trial transcripts and $27,551.21 for costs of written transcripts and videotaped recordings of depositions. [412-1] at 3–4.

### 1.     Trial and Pre-Trial Transcripts

Plaintiff first objects to the costs associated the transcripts of the October 4, 2021 final pretrial conference and the October 7, 2021 telephonic conference to discuss additional pretrial matters. [414] at 3. Plaintiff argues that the transcripts contain mere argument on the parties' various motions *in limine* which this Court summarized and ruled on in subsequent written orders. But the transcripts were not made unnecessary because the Court issued written order rulings on the motions *in limine*; those orders do not comprehensively summarize the dialogue between the parties and this Court as it pertained to the parties' pre-trial evidentiary disputes. *See, e.g.*, *Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 106 F. Supp. 3d 927, 943 (N.D. Ill. 2015) (allowing costs of the transcript from the pretrial conference where written orders on motions *in limine* incorporated the discussion at the final pretrial conference). Additionally, the pretrial proceedings did not focus solely on the parties' motions *in limine*. This Court discussed various other procedural and evidentiary matters, and it was necessary and reasonable for Defendant to order the

transcripts "so it could tailor its trial presentation" based on these discussions. *Id.* This Court accordingly overrules Plaintiff's objections to the costs of the pretrial transcripts.

Plaintiff next objects to the costs of obtaining trial transcripts, arguing that Defendant should only be able to recover costs for testimony that the parties introduced through live testimony, not deposition testimony. [414] at 3. There is no authority for the proposition that only those portions of live trial testimony can be taxed against the losing party. In addition, the court reporter did not transcribe any video deposition testimony; the jury watched those videos, and Defendant later filed those transcripts on the docket so that they are part of the trial record. The court reporter only transcribed those portions of trial where the parties read from deposition transcripts that were not conducted via video. To the extent Plaintiff objects to the costs associated with the transcription of the "live reads," this Court overrules that objection because it was reasonable and necessary for Defendant to obtain the full record of testimony from trial. Accordingly, this Court also overrules Plaintiff's objections to the costs of trial transcripts.

## 2.    Stenographic Deposition Transcripts

Next, Defendant requests costs associated with obtaining original copies of transcripts for the following witnesses: Plaintiff and his wife, Diane Africano; Plaintiff's healthcare providers and facility records custodians Dr. Yi-Hua Chen, Dr. D.M. Courtney, Christina Hinz, Dr. Amy Holmstrom, Dr. Alexander Nagle, Dr. Timothy Phillips, Dr. Kirtee Raparia, and Jeannine Stroede; Plaintiff's retained

experts Dr. Duane Priddy and Dr. Pamela Sylvestre; and Defendant's current or former employees Frank Casamassina, Chad Carlton, Trevor Carlton, Gail Christie, Dr. Kenneth Collins, Theodore Kaworski, and Tim Talcott. [412-1] at 4–5. These costs are generally recoverable. *See* 28 U.S.C. § 1920(2).

Plaintiff objects generally to the costs associated with the deposition transcripts of Defendant's employees, arguing that they were not "necessary" to prepare for this particular case because Defendant also used those depositions in thousands of other similar cases involving Defendant's mesh. [414] at 3–4. Plaintiff fails to cite any authority for this proposition—that a deposition transcript was unnecessary in one case because a party also used it in other cases. *Cf. Springer v. Ethicon, Inc.*, No. 17 C 3930, 2018 WL 1453553, at *15 (N.D. Ill. Mar. 23, 2018) ("Even though Dr. Kenton was deposed as general expert for the defense [in an MDL], Herrera needed her deposition video recording to prepare for this particular litigation.").

Nor is Plaintiff successful in arguing that the transcripts were unnecessary to Defendant because Plaintiff, not Defendant, used those deposition transcripts in raising genuine issues of material fact in response to Defendant's summary judgment motion. *Contra* [414] at 4. The fact that Plaintiff introduced these transcripts on summary judgment means that Defendant also required the use of these transcripts to respond to Plaintiff's arguments. Plaintiff also ignores that it was reasonable for Defendant to obtain these transcripts because "these individuals could have provided information probative of Plaintiff's claims he intended to pursue at trial." *Williams v.*

15

*City of Chicago*, No. 17 C 5186, 2022 WL 971604, at *10 (N.D. Ill. Mar. 31, 2022).

### 3.     Expedited and Rough Transcripts

As part of its request to recover deposition transcript fees, Defendant asks for costs associated with obtaining four transcripts on an expedited basis and for nine rough transcripts. [412-1] at 5–6 & nn. 4, 5.

Generally, to recover additional costs of expedited transcripts, a party must "show that it was reasonable and necessary to order transcripts on an expedited basis." *Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*, 873 F. Supp. 2d 939, 946 (N.D. Ill. 2012) (quoting *Neuros Co. v. KTurbo, Inc.*, No. 08-CV-5939, 2011 WL 3841683, at *2 (N.D. Ill. Aug. 25, 2011)). Defendant contends that it was necessary to obtain the rush transcripts for Dr. Priddy's 5/14/19 and 8/19/19 depositions, and for Dr. Sylvestre's 5/17/19 and 8/23/19 depositions. [412-1] at 5–6 & n.4; *see* [412-3] at 4. According to Defendant, each of Dr. Priddy's depositions directly preceded Dr. Sylvestre's depositions, so Defendant needed to expedite the delivery of Dr. Priddy's deposition transcripts to adequately prepare for Dr. Sylvestre's deposition. [412-1] at 6. Defendant does not, however, specifically explain why it needed Dr. Sylvestre's deposition transcript to prepare for Dr. Priddy's deposition; as Plaintiff points out, the two experts opined on different areas of expertise—pathology for Dr. Sylvestre, and plastics for Dr. Priddy. [414] at 4. Nor does Defendant explain why it needed to expedite the transcript for Dr. Sylvestre's second deposition in August 2019, which occurred after Dr. Priddy's second deposition. Defendant does represent, however, that the May 2019 depositions of Drs. Sylvestre and Priddy preceded Defendant's

expert disclosure deadline by mere weeks. [412-1] at 6. This Court finds it reasonable and necessary for Defendant to expedite those May 2019 transcripts so that Defendant's experts could incorporate and respond to Plaintiff's experts' deposition testimony in their expert reports. *See, e.g.*, *Brumfield, Tr. for Ascent Tr. v. IBG LLC*, No. 10 C 715, 2022 WL 972277, at *3 (N.D. Ill. Mar. 31, 2022) ("TT had to expedite transcripts for these depositions so that its experts could rely on them for their reports."). Therefore, this Court will allow Defendant to recover only the rush costs associated with the May 2019 transcripts of Drs. Priddy and Sylvestre, which were reasonable and necessary in light of Defendant's impending expert disclosure deadline. The $1,018.50 cost for Dr. Sylvestre's 8/23/19 rush transcript and the $649.90 cost for Dr. Priddy's 8/19/19 rush transcripts are not recoverable. Defendant is directed to recalculate the costs associated with these two deposition transcripts by excluding expedited processing costs.

Defendant also requests costs associated with obtaining the rough transcripts for Casamassina, Carlton, Christie, Karwoski, Dr. Priddy (two depositions), Raparia, and Dr. Sylvestre (two depositions) [412-1] at 5 n.5. Plaintiff objects to these costs. This Court agrees that these "additional services were largely for the convenience of counsel and are not recoverable." *The Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2017 WL 4882379, at *5 (N.D. Ill. Oct. 30, 2017) (disallowing costs associated with rough transcripts); *see also, e.g.*, *DSM Desotech, Inc. v. 3D Sys. Corp.*, No. 08 CV 1531, 2013 WL 3168730, at *4 (N.D. Ill. June 20, 2013) (deducting costs of rough transcripts). This Court will therefore deduct the $1,839.05 that Defendant has

claimed as taxable costs for obtaining these rough transcripts. *See* [412-3] at 4.

### 4. Video Transcripts

As part of its request to recover deposition transcript Defendant next seeks $8,387.20 associated with obtaining video transcripts for Plaintiff, Mrs. Africano, Dr. Phillips, Dr. Nagle, Trevor Carlton, Dr. Priddy (both depositions), and Dr. Sylvestre (both depositions). [412-1] at 6–7 & n.6. It is well-settled that both stenographic transcript and video-recording costs may "be taxed to the losing party." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). The standard is whether it was reasonably necessary for counsel to obtain both. *Oleksy v. Gen. Elec. Co.*, No. 06-CV-1245, 2016 WL 7217725, at *6 (N.D. Ill. Dec. 12, 2016). Reasonableness exists where there is uncertainty as to whether a witness will appear at trial. *Id.*; *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 1:17-CV-01973, 2021 WL 3489813, at *3 (N.D. Ill. Aug. 6, 2021), *appeal dismissed*, No. 21-2635, 2022 WL 671458 (7th Cir. Feb. 16, 2022).

Based on these standards, this Court disallows the video deposition costs associated with Plaintiff, Mrs. Africano, Dr. Sylvestre, and Dr. Priddy. There "wasn't a risk" that Plaintiff, his wife, and his retained experts would not appear to testify for Plaintiff's own trial. *Perez v. Staples Cont. & Com. LLC*, No. 16-CV-7481, 2021 WL 4034075, at *3 (N.D. Ill. Sept. 3, 2021) (sustaining objections to the costs of the plaintiff's video deposition). This Court will deduct the total amount of $6,547.20 ($575.00 (Mrs. Africano) + $1,135.00 (Plaintiff) + $1,890.00 (Dr. Priddy's first deposition) + $910.00 (Dr. Priddy's second deposition) + $1,152.20 (Dr. Sylvestre's

first deposition) + $885.00 (Dr. Sylvestre's second deposition)) associated with videotaping these depositions.

This Court will, however, allow Defendant to recover the costs of videotaping the depositions of Dr. Nagle, Dr. Phillips, and Trevor Carlton, as these individuals are third parties whose appearances at trial were not at all certain and whose video depositions were actually played for the jury at trial.

### 5. Miscellaneous Deposition Costs

Defendant requests $2,527.70 for fees and costs associated with processing, handling, and delivery costs charged by the court reporter for each deposition; an overtime fee charged by the court reporter for Dr. Nagle; costs of the court reporter's virtual deposition platform for the second deposition of Plaintiff, which the parties took remotely during the pandemic; and the realtime hookup fee charged by the court reporter for Dr. Sylvestre's first deposition. [412-1] at 8–9.

Plaintiff objects to these costs but offers no specific explanation why. *See* [414] at 5. Because Defendant has supported these costs with documentation and such costs are generally allowable under this circuit's jurisprudence, this Court will again overrule Plaintiff's objection. *See In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 855, 856 (N.D. Ill. 2015) (allowing real-time hookup costs, as well as processing and handling costs); *Buckley v. S.W.O.R.N. Prot. LLC*, No. 120CV00357HABSLC, 2022 WL 970067, at *2 (N.D. Ind. Mar. 31, 2022) (taxing the court reporter's sitting fee); *Druckzentrum Harry Jung GmbH & Co. KG v. Motorola, Inc.*, No. 09-CV-7231, 2013 WL 147014, at *2 (N.D. Ill. Jan. 11, 2013) (allowing the prevailing party to recover

the court reporter's overtime fee which had been "adequately documented and explained"); *Siwak v. Xylem, Inc.*, No. 19 C 5350, 2021 WL 5163289, at *1 (N.D. Ill. Nov. 5, 2021) (allowing costs "necessarily related to the video deposition" occurring remotely during the pandemic).

### C.    Copy Fees

Section 1920 allows the prevailing party to recover fees for "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Defendant requests that this Court tax Plaintiff in the amount of $22,252.80 for the copy fees it incurred in the course of this case. [412-1].

Part of those copy costs includes $2,210.72 Defendant incurred by obtaining Plaintiff's medical records. *Id.* The cost of copying medical records is clearly allowable here, where Plaintiff's personal injury claims put his medical condition squarely at issue. *See Brown v. City of Chicago*, No. 16 C 4229, 2019 WL 1923386, at *4 (N.D. Ill. Apr. 30, 2019); *see also Arce v. Chi. Transit Auth.*, No. 14 C 102, 2017 WL 714107, at *6 (N.D. Ill. Feb. 23, 2017) (noting it is "likely that CTA had little choice but to pay the various doctors' going rates for record retrieval and delivery"), *aff'd*, 738 F. App'x 355 (7th Cir. 2018). Plaintiff objects vaguely on the basis that Defendant's requests for medical records were overbroad in time and scope and that he should only be taxed the costs of the records associated with his implant surgery, explant surgery, and subsequent medical history. [414] at 6. This Court overrules Plaintiff's objections on this point. It was reasonable and necessary for Defendant to fully explore Plaintiff's medical history in a case where causation was hotly contested and the existence or

non-existence of other medical conditions from Plaintiff's past could have been probative to the issues.

Defendant also seeks $2,353.82 for converting and processing electronic files for production by Defendant to Plaintiff. [412-1] at 10. Plaintiff does not object to these e-discovery costs, and these costs are generally allowable. *Motorola Sols., Inc.,* 2021 WL 3489813, at *16 (finding the prevailing party's TIFF conversion, branding costs, and OCR costs recoverable).

Next, Defendant asks for $17,688.26 for printing and preparing exhibits and other written materials for use at trial. [412-1] at 10. Plaintiff argues, without elaborating, that Defendant has failed to prove the reasonableness and necessity of these costs. [414] at 6–7. But Defendant has attached invoices from its vendor accounting for these copy costs. [412-6] at 38–43. This Court finds it reasonable for Defendant to print exhibits and other related written materials given the "lack of wireless internet" in the courtroom. *Motorola Sols.*, 2021 WL 3489813, at *11. Moreover, it was necessary and reasonable for Defendant to print these trial materials to comply with this Court's pre-trial orders requiring them to tender two sets of pre-marked exhibit binders to the Court. *See* [283]; *see also GC2 Inc. v. Int'l Game Tech.*, No. 16 C 8794, 2019 WL 3410223, at *7 (N.D. Ill. July 29, 2019) (granting trial exhibit copying costs in part because the court's pretrial order required the parties to make two additional sets for the Court and for the jury). This Court will therefore allow Defendant to recover these copy costs.

### D.   Summary of Costs

In light of the above, this Court grants in large part Defendant's bill of costs. Defendant shall recover the cost of serving Dr. Nagle's subpoena ($129.00), copy fees ($22,252.80), and the costs of obtaining transcripts for trial and the pre-trial conferences ($15,446.80). Defendant cannot recover the costs associated with the *pro hac vice* admissions of its attorneys. Defendant will also be allowed to recover deposition transcript costs, except to the extent outlined above. Specifically, Defendant cannot recover costs associated with: (1) obtaining rough transcripts; (2) videotaping the depositions of Plaintiff, Mrs. Africano, Dr. Priddy, and Dr. Sylvestre; and (3) expediting the August 2019 depositions of Drs. Priddy and Sylvestre.

To that end, Defendant is directed to submit a short status report within 14 days of this order that provides an updated accounting of all of Defendant's requested costs. The accounting must be made consistent with the rulings here and must include a recalculation of the costs associated with the August 2019 deposition transcripts of Drs. Priddy and Sylvestre by excluding expedited processing fees.

## V.   Conclusion

For the reasons explained above, this Court denies Plaintiff's motion for a new trial [409] and grants Defendant's bill of costs [412] in large part. By June 21, 2022, Defendant shall submit a status report that includes an updated accounting of its requested costs, consistent with this Court's rulings and excluding expedited processing fees associated with the August 2019 depositions of Drs. Priddy and Sylvestre. This Court will direct the Clerk to tax Plaintiff accordingly upon receipt of

Defendant's status report. This case remains closed.

E N T E R:

Dated: June 6, 2022

_____
MARY M. ROWLAND
United States District Judge